UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIC SANFORD,

          Plaintiff,

v.

UNKNOWN MULLINS, *et al.*,

          Defendants.

_____/

Case No. 1:16-cv-1431

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a prisoner in the custody of the

Michigan Department of Corrections (MDOC).  This matter is now before the Court on defendants

Caffiero and Doolittle's motion for summary judgment on the basis of exhaustion (ECF No. 16)

and a proposed order submitted by defendants' counsel (ECF No. 14).

    **I.**      **Background**

        Plaintiff's complaint named the following MDOC employees at Ionia Correctional

Facility (ICF) as defendants: Assistant Resident Unit Supervisor Lloyd Thurlsby; Inspector

Miniard; Grievance Coordinator C. Lewis; Capt. Cassel; Lt. Zwiker; Sgt. Desrochers; Correctional

Officer (CO) Mullins; Medical Manager Jody Lebarre; Medical Supervisor Joanne Bunting; and

Nurses Nicole Doolittle and Unknown Cafiero.  Opinion (ECF No. 5, PageID.56).  The Court

previously summarized plaintiff's claims as follows:

> Plaintiff's claims arise out of an incident at ICF on April 3, 2016. On that
> date, Defendants Mullins and Desrochers took Plaintiff to segregation for
> exhibiting threatening behavior.  On the way, Defendants Mullins and Desrochers
> took Plaintiff to the shower area and ordered him to strip for purposes of a search.
> Plaintiff handed his clothing to Defendant Mullins. Plaintiff alleges that Defendant
> Mullins, unbeknownst to Plaintiff, stepped to the side and sprayed pepper spray on

Plaintiff's undershorts.  When Plaintiff put on his clothing he suffered a severe burning sensation on his genitals, scrotum, and anus.  Plaintiff was handcuffed and taken to his segregation cell.  He was not supplied with soap and towels to permit him to wash off the spray.  The spray continued to chafe and burn.

Plaintiff requested medical care for the burns. Plaintiff claims that Defendants Bunting and Cafiero would not provide treatment for nearly a week. By that time, the burn had subsided. Plaintiff alleges that Defendant Doolittle also refused to provide care because Plaintiff complained that the officers had assaulted him.

Plaintiff alleges that Defendants Desrochers, Cassell, Thurlsby, Miniard, Zwiker, and Lewis are responsible for Defendant Mullins' actions because they failed to supervise him or intervene, rectify, or investigate the incident. (Complaint, ECF No. 1, PageID.5.) Similarly, Plaintiff alleges that Defendant Lebarre failed to provide corrective supervision for the health care provider defendants. (Id., PageID.4-5.)

*Id.* at PageID.56-57 (footnote omitted).  All defendants have been dismissed from this case except for CO Mullins, Medical Supervisor Bunting (named as "Buntind" on the docket sheet), Nurse Doolittle and Nurse Cafiero (properly identified as Andrew Caffiero).

Defendants Doolittle and Caffiero have moved for summary judgment on the ground that plaintiff failed to properly exhaust his claims against them.  The specific claims against these two defendants are set forth in the complaint as follows:

Plaintiff wrote medical kites requesting treatment for his genital burns, and Buntind and Califiero would not provide him treatment for nearly a week, because Buntind ordered no care for Plaintiff until the burn subsided.  This is deemed retaliatory for his complaints.  Defendant Doolittle would provide no care because Plaintiff complained that officers assaulted him.  Nearly a week later he was finally seen by health care Califiero, who clearly knew of  the burns days earlier, and after a week when the burns subsided he falsified the medical record by saying he saw no burns.

Compl. (ECF No. 1, PageID.3-4) (emphasis omitted).  While plaintiff alleged that CO Mullins applied the pepper spray to his underwear on April 3, 2016, he provided no dates regarding his interaction with either Nurse Doolittle of Nurse Caffiero.

2

## II.    Defendants' motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

3

### B.       Failure to Exhaust

### 1.       Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.       MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after

4

the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy

Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate

grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does

not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response,

or does not receive a timely response, he must send a completed Step III grievance, using the

appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3.    Discussion

Defendants have identified two grievances related to this claim exhausted through

Step III: ICF 16-03-0464-26z ("464") and ICF 16-04-0513-12e ("513").  *See* Step III Grievance

Report (ECF No. 16-2, PageID.99); Grievance No. 464 (ECF No. 16-2, PageID.106-110);

Grievance No. 513 (ECF No. 16-2, PageID.100-105).  Grievance 464 is directed at defendant Sgt.

Desrochers, who is not a party to the present motion.  *See* Grievance 464, Step I at PageID.109.

The subject(s) of Grievance 513 are less straightforward.  In explaining his attempts

to resolve this issue prior to writing the grievance, plaintiff stated that "[t]his Grievance has been

written on Medical Staff Supervisor Bunting 1st shift and 2nd [sic] I talk to medical staff doing their

rounds in unit one.  And all, until 4/6/16 stated I can't help you put some water on it.  A c/o in unit

one put peper [sic] spray on my boxer shorts."  *See* Grievance 513, Step I at PageID.103.   In

stating the problem subject to the grievance, plaintiff stated that on 4/6/16, Nurse Caffiero assisted

him, "after hearing my situation with the peper [sic] spray, he asked did I write a kite I said yes."

*Id.*  Nurse Caffiero explained to plaintiff that he was going to "see why they haven't seen you."

*Id.*  At the noon rounds Nurse Caffiero "took down my issue, date that it happen [sic], the steps

I've taken everything."  *Id.*  Caffiero came back 10 minutes later and told plaintiff that his

supervisor in health care, named Bunting, "said he was going to put me on the callout for 4/7/16."

*Id.*  The next day, Caffiero stated that he didn't know "why they don't want to see you," but was

going to see if he could get plaintiff called out on 4/8/16.  *Id.*  Plaintiff informed Caffiero "that I

have marks from peper [sic] spray on my private parts as I did to every staff from health care

3/16[,] 4/16[,] 5/16 – 7/16" and that "Health care never examine [sic] me for my assault which was

inflicted by c/o's."  *Id.*

Grievance 513 does not complain of any matters alleged in the complaint against

either RN Doolittle or RN Caffiero.  Plaintiff explicitly stated that the grievance was directed at

the supervisor, Ms. Bunting.  The grievance does not allege any wrongful conduct against RN

Caffiero.  On the contrary, the grievance points out that RN Caffiero attempted to assist plaintiff

by scheduling an appointment.  Finally, the grievance does not mention any conduct by RN

Doolittle.  Doolittle's only connection with Grievance 513 was as a respondent who reviewed the

grievance on April 20, 2016.  *See* Grievance 513, Step I at PageID.103-104.  A prison official

whose only role involved the denial of an administrative grievance cannot be liable under § 1983.

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  *See Alder v. Correctional Medical Services*,

73 Fed. Appx. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim

of constitutional dimension.").

Based on this record, plaintiff failed to properly exhaust any grievance against

either RN Caffiero or RN Doolittle.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

Accordingly, defendants Caffiero and Doolittle should be granted summary judgment and dismissed from this action.

Finally, the Court notes that defendant Doolittle's counsel submitted a proposed, agreed "Order dismissing the case in its entirety with prejudice" which appeared to be an attempted voluntary dismissal of plaintiff's claims against RN Doolittle.  *See* Proposed Order (ECF No. 14). Plaintiff objected to the proposed order (*see* Letter (ECF No. 15)), which was never entered.  This proposed order should stricken.

### III.    Recommendation

For these reasons, I respectfully recommend that defendants Caffiero and Doolittle's motion for summary judgment (ECF No. 16) be **GRANTED**, the proposed Order (ECF No. 14) be **STRICKEN**, and defendants Caffiero and Doolittle be **DISMISSED** from this action.

Dated:  February 23, 2018                                  /s/ Ray Kent
                                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).