UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIC SANFORD,

    Plaintiff,

v.

UNKNOWN MULLINS, *et al.*,

    Defendants.
_____/

Case No. 1:16-cv-1431

Hon. Paul L. Maloney

# REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants Mullins and Bunting's motion for summary judgment (ECF No. 51).

## I.     Background

Plaintiff's complaint named the following MDOC employees at Ionia Correctional Facility (ICF) as defendants: Assistant Resident Unit Supervisor Lloyd Thurlsby; Inspector Miniard; Grievance Coordinator C. Lewis; Capt. Cassel; Lt. Zwiker; Sgt. Desrochers; Correctional Officer (CO) Mullins; Medical Manager Jody Lebarre; Medical Supervisor Joanne Bunting; and Nurses Nicole Doolittle and Unknown Cafiero. Opinion (ECF No. 5, PageID.56). The Court previously summarized plaintiff's claims as follows:

> Plaintiff's claims arise out of an incident at ICF on April 3, 2016. On that date, Defendants Mullins and Desrochers took Plaintiff to segregation for exhibiting threatening behavior. On the way, Defendants Mullins and Desrochers took Plaintiff to the shower area and ordered him to strip for purposes of a search. Plaintiff handed his clothing to Defendant Mullins. Plaintiff alleges that Defendant Mullins, unbeknownst to Plaintiff, stepped to the side and sprayed pepper spray on Plaintiff's undershorts. When Plaintiff put on his clothing, he suffered a severe burning sensation on his genitals, scrotum, and anus. Plaintiff was handcuffed and

1

> taken to his segregation cell.  He was not supplied with soap and towels to permit him to wash off the spray.  The spray continued to chafe and burn.
>
> Plaintiff requested medical care for the burns. Plaintiff claims that Defendants Bunting and Cafiero would not provide treatment for nearly a week. By that time, the burn had subsided. Plaintiff alleges that Defendant Doolittle also refused to provide care because Plaintiff complained that the officers had assaulted him.
>
> Plaintiff alleges that Defendants Desrochers, Cassell, Thurlsby, Miniard, Zwiker, and Lewis are responsible for Defendant Mullins' actions because they failed to supervise him or intervene, rectify, or investigate the incident. (Complaint, ECF No. 1, PageID.5.) Similarly, Plaintiff alleges that Defendant Lebarre failed to provide corrective supervision for the health care provider defendants. (Id., PageID.4-5.)

*Id.* at PageID.56-57 (footnote omitted).  All defendants have been dismissed from this case except for CO Mullins and Medical Supervisor Bunting (named as "Buntind" on the docket sheet).  Now, defendants Mullins and Bunting have moved for summary judgment.

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**B.    CO Mullins**

The gist of plaintiff's claim is that while plaintiff was being strip searched on April 3, 2016, defendant Mullins had possession of plaintiff's undershorts and sprayed pepper spray on them. When plaintiff put on his undershorts, it caused him to experience burning in his genitals, scrotum and anus. The Court has construed plaintiff's claim against Mullins as involving cruel and unusual punishment contrary to the Eighth Amendment. *See* Opinion (ECF No. 5, PageID.61-62).[1]

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and

---

[1] The court notes that defendants characterize this incident as the use of excessive force. *See* Defendants' Brief (ECF No. 52, PageID.254-255).

(2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff has alleged that defendant Mullins engaged in cruel and unusual punishment in violation of the Eighth Amendment when Mullins sprayed plaintiff's undershorts with pepper spray. Compl. at PageID.5. Plaintiff also alleged that this action involved an assault and battery under state law. *Id.*

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8.

To demonstrate the objective component, the plaintiff must demonstrate that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348 (citation omitted). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Routine discomfort is part of the

penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Defendants take the position that the incident never occurred, relying on the administrative record produced during the grievance proceedings[2] and plaintiff's deposition:

> Plaintiff alleges that Officer Mullins sprayed pepper spray on his clothing. There is absolutely no evidence to support this claim against Mullins. In fact, when asked if he saw Mullins spray pepper spray, Plaintiff indicated he did not. (Exhibit A - Sanford Deposition, Page 26, line 7-24). Plaintiff further testified that he didn't see anyone spray pepper spray on his clothes. Not only did Plaintiff not witness pepper spray being deployed on his clothing, he testified that he didn't hear it being sprayed. He testified that following the strip search, Officer Mullins got his clothes off the ledge and handed them to him. (Exhibit A - Sanford Deposition, Page 7, lines 8-22).
>
> Plaintiff filed grievance ICF-2016-04-0464-26Z, alleging that the officer put pepper spray on his clothes. During the investigation into Plaintiff's grievance Captain Cassel reviewed the institutional camera. The video showed Officer Mullins conduct a strip search of prisoner Sanford. Officer Mullins took Sanford's clothes after they were handed to him, searched them and then placed them on a

---

[2] One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the Court. As the Supreme Court stated in *Jones v. Bock*, 549 U.S. 199, 204 (2007), "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed *by producing a useful administrative record*" (emphasis added).

      ledge next to him until the search was complete. Once the strip search was complete Officer Mullins gave prisoner Sanford back his clothes. The video showed no evidence of Officer Mullins spraying prisoner Sanford or his clothes with pepper spray. (See Exhibit B, Grievance Affidavit and Grievance ICF-2016-04-0464-26Z).

Defendants' Brief (ECF No. 52, PageID.255-256). Plaintiff testified that while he did not see or hear anyone put pepper spray on his clothes, he assumed that CO Mullins did it stating, "ain't nobody else there but me and him, who else did it." Plaintiff Dep. at PageID.269.

      As an initial matter, plaintiff cannot rely on his allegations as set forth in his "verified" complaint.[3] Plaintiff attempted to verify his complaint using an unsworn declaration under perjury pursuant to 28 U.S.C. § 1746, which provides that in any matter which "is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury." 28 U.S.C. § 1746(2). Such statements must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, plaintiff created his own "Declaration of Veracity", stating "Dominic Sanford Does swear he has read these facts and believes them to be true to the best of his knowledge and information. Pursuant to 28 USC § 1745 [sic]". Plaintiff's homespun "declaration," based on information and belief, fails to meet the requirements of § 1746.

      In response to the motion for summary judgment, plaintiff filed a paper which he referred to as an "affidavit" (ECF No. 56-1, PageID.295). In this document, plaintiff stated, among

---

[3] In recent years, many prisoners have filed "verified" complaints to avoid dismissal on summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).

other things, that "CO Mullins went outside the scope of his duties of usage of Chemical Agents/pepper-spray" and that "[w]hile Plaintiff's back was turned, CO Mullins improperly employed the chemical agent/pepper spray on Plaintiff's crotch area of his boxer shorts, state blue pants and the lower back area of my t-shirt, without a valid reason." Affidavit (filed January 28, 2019) (ECF No. 56-1, PageID.297). Plaintiff further stated that at some point in time on April 4, 2016, he informed non-party ARUM Miniard of the situation, that he needed to see medical, and pushed his clothing to Miniard through the food slot, when Miniard stated "yes they do smell like pepper spray." *Id.*

As an initial matter, the January 28, 2019 paper was not an affidavit. Rather, plaintiff identified it as "but rather a "copy" of a previously filed "affidavit" which plaintiff "sent the court and Defendants." Affidavit (ECF No. 56-1, PageID.295). The only previously filed affidavit was the "Affidavit of Dominic Sanford" (dated July 12, 2017) (ECF No. 23, PageID.167-171). However, this document was itself not an affidavit. While the July 12th document included a notary's seal and signature, it did not contain a notary jurat vouching for the truthfulness of the signed record or stating that it was a sworn statement. *See* M.C.L. § 55.265(a) ("'Jurat' means a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed record."). "The absence of a jurat or other evidence of verification requires a finding that the document fails to constitute an affidavit." *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). "A purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930), *quoting Clarke v. Wayne Circuit Judge*, 193

7

Mich. 33; 159 NW 387 (1916) (syllabus).  Furthermore, plaintiff's "affidavit" does not qualify as a declaration under 28 U.S.C. § 1746.  Once again, plaintiff did not use the statutory language, but created his own language, stating "I Dominic Sanford duly sworn, 28 USCA § 1746, will testify truthfully to . . ."  Affidavit (ECF No. 23, PageID.167).  Plaintiff's recitation that he was "duly sworn" is factually incorrect (he did not take an oath from a notary) and is not relevant to a declaration under § 1746, which refers to *unsworn* declarations.

Based on this record, plaintiff testified that he did not see or hear defendant Mullins spray his undershorts with pepper spray.  The investigation documented in the administrative record of the grievance proceeding found no evidence that the incident occurred, based in part on a video recording.  In short, plaintiff has presented no evidence that this incident occurred.  Accordingly, defendant Mullins' motion for summary judgment should be granted.

    C.  **Medical Supervisor Bunting**

Plaintiff claims that defendant Medical Supervisor Bunting was deliberately indifferent to his serious health needs because she failed to provide timely or adequate health care related to the pepper spray incident.  Compl. at PageID.5.  It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976).  In the medical context, mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  In other words, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  When a prisoner received treatment for his condition, the prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all."  *See Mitchell v.*

8

*Hininger*, 553 Fed. Appx. 602, 604-05 (6th Cir. 2014), quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotation marks omitted). "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834. As discussed, a court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8. The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson*, 501 U.S. at 302-03.

There is no evidence that plaintiff sought medical treatment from healthcare immediately after the alleged incident on April 3, 2016, other than the allegation in the complaint that he "wrote medical kites requesting treatment for his genital burns." Compl. at PageID.3. The record reflects that the prison healthcare department received a kite from plaintiff on April 8, 2016, five days after the alleged pepper spray incident. The kite appears to have been sent on April 7, 2016, and refers to an incident on "3/16" (4/3/16?) when pepper spray "was place [sic] on my clothes, my penis and other parts was burning [sic] I talked to the sgt and medical staff on rounds

9

everyday but they both did nothing". Kite (ECF No. 52-3, PageID.278). Plaintiff continued, "The burning stopped [sic] in the am of 4/6/16 but there's burn marks that are still sore. From 4/3/16 I couldn't urinate all the way to the 6/16 am. [sic]." *Id*. Former defendant RN Doolittle responded to the kite on April 8, 2016, stating "Please be patient you will be placed on the nurse call for evaluation." *Id*.

On April 7, 2016, the same day that plaintiff sent the kite to healthcare, he filed a grievance about his medical treatment stating that he wrote a kite to healthcare about his situation on April 6, 2016, and that former defendant Cafiero told plaintiff that a "supervisor in health care name [sic] Bunting said he [sic] was going to put you on call out for 4/7/16" but that plaintiff was not called out. *See* Grievance ICF 16-04-513-12E1 ("513") (ECF No. 52-3, PageID.282). As discussed, plaintiff wrote a kite on April 7, 2016; there is no record that plaintiff sent a kite on April 6, 2017. The Step II grievance response notes that plaintiff was seen by nursing staff on April 11, 2016, and that "no burns, scabs, or open areas were noted." Grievance 513 (PageID.275).

The medical record in this matter is sparse. Defendants have presented evidence that plaintiff did not seek medical attention from health care until April 7, 2016 – four days after the alleged incident. In addition, plaintiff has provided no evidence to link Medical Supervisor Bunting to his alleged failure to receive medical treatment. Accordingly, defendant Bunting's motion for summary judgment should be granted.

### III. Recommendation

For these reasons, I respectfully recommend that defendants Mullins and Bunting's motion for summary judgment (ECF No. 51) be **GRANTED** and that this action be **TERMINATED**.

Dated: September 23, 2019                            /s/ Ray Kent
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).