UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIC SANFORD,

    Plaintiff,

v.

UNKNOWN MULLINS,
*et al.*,

    Defendants.
_____/

Case No. 1:16-cv-1431

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Dominic Sanford ("Sanford"), a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). Sanford sued a number of MDOC employees at the Ionia Correctional Facility ("ICF"). Two defendants remain: Assistant Resident Unit Supervisor Lloyd Thurlby (sometimes referred to as "Thurlsby") and RN Andrew Caffiero (sometimes referred to as "Cafiero"). Defendant Thurlby is deceased. *See* discussion, *infra*. This matter is now before the Court on defendant Caffiero's motion for summary judgment (ECF No. 102). The motion is unopposed.

    **I.**     **Background**

This Court summarized Sanford's claims in pertinent part as follows:

> Plaintiff's claims arise out of an incident at [ICF] on April 3, 2016. On that date, Defendants Mullins and Desrochers took Plaintiff to segregation for exhibiting threatening behavior. On the way, Defendants Mullins and Desrochers took Plaintiff to the shower area and ordered him to strip for purposes of a search. Plaintiff handed his clothing to Defendant Mullins. Plaintiff alleges that Defendant Mullins, unbeknownst to Plaintiff, stepped to the side and sprayed pepper spray on Plaintiff's undershorts. When Plaintiff put on his clothing he suffered a severe burning sensation on his genitals, scrotum, and anus. Plaintiff was handcuffed and

1

>    taken to his segregation cell. He was not supplied with soap and towels to permit him to wash off the spray. The spray continued to chafe and burn.
>
>    Plaintiff requested medical care for the burns. Plaintiff claims that Defendants Bunting and Cafiero would not provide treatment for nearly a week. By that time, the burn had subsided. Plaintiff alleges that Defendant Doolittle also refused to provide care because Plaintiff complained that the officers had assaulted him.
>
>    Plaintiff alleges that Defendants Desrochers, Cassell, Thurlsby, Miniard, Zwiker, and Lewis are responsible for Defendant Mullins' actions because they failed to supervise him or intervene, rectify, or investigate the incident. Complaint ECF No. 1, PageID.5). Similarly, Plaintiff alleges that Defendant Lebarre failed to provide corrective supervision for the health care provider defendants. (*Id.*, PageID.4-5).

Opinion (ECF No. 5, PageID.56-57). This Court entered judgment against Sanford on October 8, 2019. *See* Judgment (ECF No. 64). Sanford appealed. The Sixth Circuit affirmed in part, reversed in part, and remanded some of Sanford's claims. *See Sanford v. Mullins*, No. 19-2255 (6th Cir. Sept. 15, 2020) (ECF No. 72). On remand, this case proceeded against defendants Thurlby and Caffiero.

## II.     Defendant Caffiero's motion for summary judgment

### A.     Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Sanford did not file a response to the motion as required by W.D. Mich. LCivR 7.2(c).[1] "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a

---

[1] The Court notes that Sanford attempted to file a "verified complaint" pursuant to 42 U.S.C. § 1746. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). Section 1746(2) provides that any matter which "is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury." Such statements must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, Sanford does not state that his alleged facts are "true and correct" nor does ne make an unsworn declaration. Rather, Sanford made up his own language, stating "Dominic Sanford Does swear he has read these facts and believes them to be true to the best of his knowledge and information. Pursuant to 28 USC § 1745 [sic]." Compl. (ECF No. 1, PageID.6). Furthermore, summary judgment cannot be granted on basis of Sanford's beliefs. *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) ("statements made on belief or on information and belief, cannot be utilized on a summary-judgment motion") (internal quotation marks omitted).

motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B. Legal Standard

Sanford seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, Sanford alleged that RN Caffiero violated his rights under the 8th Amendment by being deliberately indifferent to his serious medical needs. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the 8th Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable 8th Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have

4

unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734, F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

    **C.**    **Discussion**

Sanford alleged that corrections officers placed pepper spray on his undershorts on April 3, 2016, and that Caffiero would not provide treatment for nearly a week. There is no record of any interaction between Sanford and Caffiero on April 3, 2016. Caffiero identified two interactions with Sanford. Sometime in "April 2016" Sanford called Caffiero to his cell. Caffiero Decl. (ECF No. 103-4, PageID.528). At that time, Sanford told Caffiero "that a prisoner on the other side of the unit had been sprayed with pepper spray," that "the pepper spray traveled all the way down to his side of the unit, under his cell door, through his pants, and had burned his penis and scrotum." *Id*. Caffiero continued,

5

> 5. I asked Plaintiff Sanford if he had burns anywhere else and he said no. Looking through Plaintiff Sanford's cell window, I did not observe any apparent bums to his hands or face, nor did I smell pepper spray in the unit.
>
> 6. I then asked Plaintiff Sanford if I could inspect his penis and scrotum through the cell window and he agreed. I did not observe any burn marks or open skin areas on Plaintiff Sanford's penis or scrotum.
>
> 7. I told Plaintiff Sanford that if he had milk on his lunch tray that he could pour some on the area where he felt the burning sensation. I informed Plaintiff Sanford that milk would help neutralize the effect of alleged pepper spray. I told Plaintiff Sanford to send in a medi[c]al kite (note) if his symptoms persisted.

*Id*. at PageID.529. There is no medical record of this brief interaction. Based on Sanford's deposition testimony, *infra*, the Court infers that this interaction occurred some time after April 3, 2016, when Caffiero was passing out medication in Sanford's unit.

Sanford's medical records indicate that he sent a medical kite on April 7, 2016, four days after the alleged pepper spray incident. In his kite, Sanford stated that on "3/16" [presumably April 3, 2016], pepper spray was placed on his clothes and that his penis and other parts were burning. Med. Record (ECF No. 103-3, PageID.526). He could not urinate between April 3, 2016, and the morning of April 6, 2016. *Id*. The burning stopped on April 6, 2016, but there are "burn marks that are still sore." *Id*. On April 8, 2016, RN Doolittle advised Sanford to be patient and that he will be placed on nurse call out for evaluation. *Id*.

On April 11, 2016, Sanford was scheduled for a medical call-out. Caffiero Decl. at PageID.529. Caffiero examined Sanford at that time.

> Plaintiff Sanford had again complained about a burning sensation to his penis and thigh from pepper spray being used on another inmate. I examined Plaintiff Sanford in a day room at ICF. I did not observe any burn marks or open areas of the skin on his penis or scrotum.

Caffiero Decl. at PageID.529. Plaintiff's medical records reflect that on that date, Sanford stated "that his penis and thight [sic] where [sic] burning when a chemical agent was used on another

6

inmate." Medical Records (ECF No. 103-3, PageID.524). The records reflect that "no burned / scabbed or open areas were seen on penis or thighs." *Id*. RN Caffiero made assessments of "[a]lteration in skin integrity" and "[p]otential or actual skin infection." *Id*. Caffiero ordered "[s]ick call if symptoms do not subside or become more severe" and noted that "[p]atient education provided." *Id*.

At his deposition, Sanford testified that on April 3, 2016, after he took a shower, he smelled pepper spray when CO Mullins handed him back his clothes. Sanford Dep. (ECF No. 103-2, PageID.496). His genitals started burning when he put on his boxers. *Id*. Later that day, a nurse "did a round" in segregation where Sanford was assigned. *Id.* at PageID.497.

Sanford testified that at some point in time, perhaps April 4th or 5th, he saw RN Caffiero. *Id*. at PageID.499. Caffiero was passing out medication at the time. *Id*. at PageID.500. Sanford testified that he said "the C/Os put pepper spray on my drawers and my – T-shirt." *Id*. Caffiero asked Sanford if he wrote a kite. *Id*. Sanford responded, "I wrote a kite but I need to see medical right now real fast because my genitals are burning real bad right now." *Id*. Caffiero did not examine Sanford that day. *Id*. Caffiero said he was "going to see what's going on." *Id*. at PageID.501. Sanford states that he saw Caffiero "later", but was vague as to when, "When he [Caffiero] came back that afternoon around about ten, 10:30, 11:00 so wherever – how – whatever date – I mean time that he came back he did come back." *Id*. at PageID.501. When Caffiero came back, he told Sanford that "my supervisor said don't bring him over to medical" and told Sanford to "[w]rite a kite." *Id*.

Sanford stated that he saw RN Caffiero passing medicine the next day (April 5th or 6th) and told him "like my penis is burning," "[m]y anus is burning," "[m]y testicles is [sic] burning," and "this is a medical emergency." *Id*. at PageID.502. According to Sanford, Caffiero

7

responded that, "yeah, that seems like a medical emergency to me, but my supervisor said she don't want to see you, you know what I'm saying." *Id*.  Sanford asked Caffiero to tell his supervisor that he was "really messed up" and Caffiero said, "I'll see" and left.  *Id*.  Sanford stated that the first time Caffiero saw him was on April 11th.  *Id*. at PageID.502-503.  Sanford stated that he spoke to Caffiero "every day that he worked until the time of my examination."  *Id*. at PageID.503.

Assuming that Sanford was injured by pepper spray on April 3, 2016, there is no record that he sent a medical kite until April 7, 2016.  While Sanford testified that he told Caffiero that he wrote a kite on April 4th or 5th, there is no record that occurred.  It is undisputed that RN Caffiero had at least one interaction at with Sanford at his cell sometime before April 11, 2016.  When Caffiero examined Sanford on April 11th, Sanford gave a different story about how the injury occurred, *i.e.*, that his penis and thigh were burned when pepper spray was used on another inmate.  At that time, RN Caffiero saw "no burned / scabbed or open areas were seen on penis or thighs."  Med. Record at PageID.524.  There is no evidence that Sanford required any treatment.

Assuming that Sanford mentioned his discomfort to RN Caffiero while medications were being passed out sometime before April 11, 2016, Sanford's claim involves a delay in treatment.  If a deliberate indifference claim is based on a delay of treatment, the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).[2]  Contrary to Sanford's allegations, the

---

[2] This standard of determining a prisoner's serious medical need applies in claims involving: a delay in treatment which caused injury, loss, or handicap; delayed administration of medication; determination by medical personnel that medical treatment was unnecessary; whether any delay in providing medical care was harmless; and whether the prisoner had a very minor injury for which many people outside prison would not even thing of seeking outside medical treatment.  *See Blackmore*, 390 F.3d at 897-898.

record does not indicate that he had a medical emergency or a serious medical need which required treatment before April 11, 2016. In addition, Sanford has failed to present medical evidence to establish any detrimental effect due to the alleged delay in medical treatment. For these reasons, defendant RN Caffiero's unopposed motion for summary judgment should be granted.

### III.     Defendant Thurlby

Defendant Thurlby is deceased. There has been no substitution of a proper party pursuant to Fed. R. Civ. P. 25(a)(1). *See* Order (ECF No. 101). In this regard, no one can be substituted in for Thurlby because he was never a party to this lawsuit; Thurlby did not execute a waiver of service and was never served with a summons. Fed. R. Civ. P. 25(a)(1) only applies to parties, *i.e.*, "someone who had been made a party to the action," through service of the complaint, "before his death." *See Washington v. Baltimore Police Department*, 457 F. Supp. 3d 520, 544-45 (D. Md. 2020) (quoting *Moul v. Pace*, 261 F. Supp. 616, 617-18 (D. Md. 1966)). Accordingly, the Court should dismiss Sanford's claims against him.

### IV.     Recommendation

Accordingly, I respectfully recommend that defendant Caffiero's motion for summary judgment (ECF No. 102) be **GRANTED**, that the deceased defendant Thurlby be **DISMISSED**, and that this action be **TERMINATED**.


Dated:  January 24, 2022                                        /s/ Ray Kent
                                                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).